**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gary Lee SPIRES, Defendant–Appellant.**

**No. 92–50126.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1993.

Decided Aug. 26, 1993.

Leon L. Peterson, Deputy Federal Public Defender, Santa Ana, CA, for defendant-appellant.

Wayne R. Gross, Asst. U.S. Atty., Santa Ana, CA, for plaintiff-appellee.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

Gary Spires appeals the district court's denial of his motions to suppress evidence and disclose the identity of the government's confidential informant. Because the district court erred in not holding an *in camera* hearing on the disclosure motion, we reverse that denial and direct that such a hearing be held. We also remand to permit Spires to withdraw his plea pursuant to Fed.R.Crim.P. 11(a)(2).

### I. Facts and Proceedings

In mid March 1990, a confidential informant contacted a Corona (California) Police Department detective and stated that Gary Lee Spires and others possessed and sold methamphetamine and marijuana in a local residence. The detective watched the house, in which Spires resided, for a week and confirmed that narcotics trafficking was taking place. He obtained a search warrant for the residence (and for Spires' person) that he, along with several other officers, executed. Spires was not home at the time, although his roommate was. Because Spires' bedroom door was locked, the officers forced it open. They found three machine guns, two rifles with sawed-off barrels, a loaded pistol, five unloaded pistols, an assault rifle, and three shotguns, one loaded and two unloaded. They also discovered scales, measuring cups, a box-containing numerous zip-loc baggies, two-beepers, and several pay/owe sheets.

Sometime during the search, Spires drove past the residence in his truck. The detective and another officer, in two police vehicles, chased the truck for three-quarters of a mile. They ordered Spires to get out and told him to lie face down on the ground. He was handcuffed, put in the back of one of the police cars, and transported back to his residence. An officer followed in the truck. According to the government, after Spires arrived at his home, he consented to a search of his truck. Spires denies this. The officers found 96 grams of methamphetamine in a false "Fix–a–Flat" canister in the truck. Spires was then formally arrested and his truck impounded as a forfeited asset.

The officers also found a business card for a storage facility when they searched the truck. Spires then allegedly told them that he kept an expensive dune buggy in a locker at the facility and gave them permission to search the locker. Spires claims he did not consent to this search either. On the evening of Spires' arrest, officers cut the bolt on the locker, opened it, and found a silencer and handwritten instructions on how to manufacture methamphetamine. About a week later, the confidential informant told police that there was a significant amount of methamphetamine in a false battery under the hood of Spires' truck, which was then being stored in the city yard. Officers took the battery apart and found 441 grams of the controlled substance.

Spires filed a motion to suppress the evidence obtained in the two searches of the truck and the search of the storage locker. He also filed a motion to disclose the identity of the confidential informant. The district court held a hearing on the motion to suppress, and then denied it, initially on the basis of oral findings. The court subsequently issued a brief written opinion. *United States v. Spires,* 777 F.Supp. 1530 (C.D.Cal. 1991). The issues covered by the two rulings overlap only in part. No hearing was held on the motion to disclose the identity of the informant, but that motion also was denied. Spires entered a conditional plea of guilty pursuant to Fed.R.Crim.P. 11(a)(2) and was sentenced.

### II. The Motion to Suppress

#### A. *Spires Voluntarily Consented to the Initial Search of the Truck and the Search of the Storage Locker.*

In his oral findings the district judge upheld the initial search of Spires' truck as a search incident to arrest and alternatively as a consensual search. He upheld the search of the storage locker solely on the latter ground. Because we uphold the judge's findings as to voluntary consent with respect to both the first truck search and the storage locker search, we need not consider whether either is sustainable on any other theory. We review the district court's factual finding

of consent to a search under the clearly erroneous standard. *United States v. George,* 987 F.2d 1428, 1431 (9th Cir.1993).

■ There is a factual dispute between the officers and Spires as to whether he gave consent to a search of either the truck or the locker. In ruling on Spires' suppression motion, the judge initially expressed considerable uncertainty as to who was telling the truth, but it is apparent that he ultimately chose to believe the officers. His credibility choice was not clearly erroneous. However, the government must also prove that Spires' consent to the searches was voluntary, based upon the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Mere acquiescence to lawful authority is insufficient. Some of the factors to be weighed are (1) whether the person was in custody; (2) whether the officers had their guns drawn; (3) whether *Miranda* warnings have been given; (4) whether the person was told that he had the right not to consent; (5) whether he was told a search warrant could be obtained. *United States v. Carbajal,* 956 F.2d 924, 930 n. 3 (9th Cir.1992). Another relevant factor is the defendant's belief as to the likelihood that contraband will be discovered. *United States v. Gonzalez–Basulto,* 898 F.2d 1011, 1013 (5th Cir.1990). We review a finding of voluntariness for clear error. *United States v. Koshnevis,* 979 F.2d 691, 694 (9th Cir.1992).

■ The government argues that the district court found that Spires' consent to the first search of the truck was voluntary. It is incorrect, but only in a literal sense. The district judge's factual finding of voluntariness was directed exclusively to Spires' consent to the search of the storage locker. However, Spires' consent to that search occurred only a few minutes after his consent to the search of his truck. The only change in circumstances that occurred between the two consents was Spires' formal arrest. Thus, the district court's discussion of the facts regarding Spires' consent to the search of the storage locker encompasses all of the *coercive* pressures on Spires that existed at the time of his consent to the search of the truck—*plus* one more. Since the latter search was held not to have been coerced, the same holding applies *a fortiori* to the former. Accordingly, as a matter of logic, and thus (in this case) of law, the district judge's decision as to the truck search necessarily complies with the mandate of *United States v. Prieto–Villa,* 910 F.2d 601, 606 (9th Cir.1990) (where factual issues are involved in determining motion to suppress, the district court must state its essential findings on the record). *See also* Fed.R.Crim.P. 12.

In determining whether Spires voluntarily consented to the searches at issue, the district judge weighed the appropriate factors and found that the government had met its burden. Because that finding is not clearly erroneous, we affirm the district court's determinations that the search of the storage locker and, *a fortiori,* the initial search of the truck were valid consensual searches.

### B. Probable Cause Supported the Second Search of the Truck.

■ Spires' truck was impounded as a forfeited asset at the time of his arrest. Seven days later, while the vehicle was in police custody, the confidential informant told the officers that there were drugs in a false battery in the truck. The district judge correctly concluded that, under the automobile exception to the warrant requirement, *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), if the police had probable cause to search the truck or one of its compartments, then no warrant was needed. *Spires,* 777 F.Supp. at 1533. A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify a warrantless search. *United States v. Johns,* 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985). The confidential informant's tip, coupled with the fact that drugs had already been discovered in the truck, was sufficient to furnish probable cause to search the battery. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Therefore, we affirm the district court with respect to the second search of Spires' truck.

**1238**

### III. The Motion for Disclosure of the Confidential Informant

■ The government has a limited privilege to withhold an informant's identity. *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957). To obtain disclosure of the identity of a confidential informant, a defendant must show a need for the information. *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir.1989). In ruling on disclosure requests, a trial court must balance 1) the extent to which disclosure would be relevant and helpful to the defendant's case, and 2) the government's interest in protecting the identity of a particular informant. In doing so the court must consider "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro*, 353 U.S. at 62, 77 S.Ct. at 629. The district judge's striking of the appropriate balance is reviewed for an abuse of discretion. *Sai Keung Wong*, 886 F.2d at 255. We review the judge's determination whether a defendant has made a sufficient showing to justify an *in camera* hearing on disclosure under the same standard. *United States v. Fixen*, 780 F.2d 1434, 1440 (9th Cir.1986).

At the argument on his disclosure motion in the district court, Spires asserted that the guns and drugs seized by the police belonged to his roommate. He told the court that he suspected his roommate was the confidential informant. He said that if this were the case, the information would be helpful to his defense. He suggested that under the circumstances the appropriate course would be for the court to hold an *in camera* hearing on the request for disclosure. The district court denied the request for an *in camera* hearing on the basis that disclosure would be relevant only to the question of probable cause for the searches of the residence and Spires' person and would not be pertinent to the government's case in chief. The government contends that this decision was correct. It also argues that Spires' demonstrated need for disclosure was outweighed by the state's interest in protecting informers and preventing the loss of the use of the informer.

■ Our precedents demonstrate that in disclosure cases an *in camera* hearing is favored procedure. *See United States v. Johns*, 948 F.2d 599, 606 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3046, 120 L.Ed.2d 913 (1992); *Fixen*, 780 F.2d at 1439–40; *United States v. Anderson*, 509 F.2d 724, 729–30 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). Other circuits have also noted the advantages of that procedure. *E.g., United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir.1985), *cert. denied,* 475 U.S. 1030, 106 S.Ct. 1234, 89 L.Ed.2d 342 (1986); *Gaines v. Hess*, 662 F.2d 1364, 1369 (10th Cir.1981); *United States v. Alexander*, 559 F.2d 1339, 1344 (5th Cir. 1977), *cert. denied,* 434 U.S. 1078, 98 S.Ct. 1271, 55 L.Ed.2d 785 (1978). From the defendant's standpoint, an *in camera* hearing may provide many of the same benefits as disclosure itself, particularly where defendant's counsel is allowed to participate under an order not to reveal any information disclosed in chambers.[1] *See Anderson*, 509 F.2d at 730. However, unlike actual disclosure, an *in camera* hearing bears little risk of disclosing the identity of the informant and does not jeopardize the government's future use of that individual. Consequently, there is ordinarily no governmental interest to balance against the defendant's in deciding whether to hold an *in camera* hearing. The only question is whether a defendant has made the necessary showing.

■ While an *in camera* hearing need not be held whenever there is a request for the identity of an informant, *Fixen*, 780 F.2d at 1440, we have previously approved the holding of such a hearing where the defendant makes a "minimal threshold showing" that disclosure would be relevant to at least one defense. *Sai Keung Wong*, 886 F.2d at 256. We now hold that under those circumstances a hearing is required. In this case, Spires made the requisite minimal showing. One theory of his defense is that the weapons and drugs that the police seized belonged to his roommate. If the roommate was the informant, that fact would be relevant to the

---

1. We express no view as to the circumstances under which defense counsel may be excluded in any particular case, including the present one. That issue is simply not before us.

jury's determination whether Spires knowingly possessed the firearms, drugs, and related paraphernalia. Disclosure might provide a plausible defense explanation of why there was contraband in Spires' bedroom and truck at the time of the search. Spires could argue that his roommate planted the contraband in order to set him up. While Spires could make the argument that the weapons and drugs were his roommate's in any event, his contention would be significantly more persuasive if it turned out that the roommate was the confidential informant. Thus, disclosure of the informant's identity is plainly relevant to one of Spires' defenses.[2]

Where a defendant makes a showing that identification of the government's confidential informant may be relevant and helpful to a possible defense at trial, a district court abuses its discretion if it fails to hold an *in camera* hearing on disclosure. Here, the district judge simply did not recognize that Spires sought disclosure of the informant's identity for use as a part of his substantive defense at trial. The judge's failure to provide Spires with an *in camera* hearing constituted an abuse of discretion. Accordingly, the district court's denial of Spires' disclosure motion must be vacated and Spires must be permitted to withdraw his plea of guilty. Fed.R.Crim.P. 11(a)(2).

IV. Conclusion

We **AFFIRM** the order denying Spires' motion to suppress. We **VACATE** the order denying his motion to compel disclosure of the identity of the confidential informant. We **REMAND** so that the district court can conduct the required *in camera* hearing and Spires may withdraw his plea of guilty in accordance with Fed.R.Crim.P. 11(a)(2).

---

**2.** An *in camera* hearing is a particularly useful device in these circumstances. Disclosure would be helpful to Spires' defense only if his roommate was the confidential informant. The *in camera* hearing will settle whether or not he was. This, in turn, will determine whether the district court should even reach the question whether the identity of the informant should be made available to Spires and thus the jury.